United States District Court
Southern District of Texas
**ENTERED**
June 25, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SONIA VAZQUEZ, | § § § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:23-cv-4449 |
| | § § | |
| WAL-MART STORES TEXAS, LLC, | § § | |
| *Defendant.* | § § § § § § | |

## ORDER

Pending before the Court are numerous motions. First, Plaintiff Sonia Vazquez ("Plaintiff") filed a Motion to Exclude all opinions from Defendant Wal-Mart Stores Texas, LLC's ("Walmart" or "Defendant") expert, John Leffler. (Doc. No. 21). Walmart responded, (Doc. No. 26), and Plaintiff replied. (Doc. No. 28). Walmart then filed a motion to amend its response. (Doc. No. 31). Next, Plaintiff filed a Motion for Partial Summary Judgment on liability. (Doc. No. 23). Walmart responded in opposition, (Doc. No. 24), and Plaintiff filed no reply. Walmart also filed a Motion for Summary Judgment, (Doc. No. 22), to which Plaintiff responded. (Doc. No. 25). Finally, Walmart filed a motion for leave to supplement its motion for summary judgment based on new Fifth Circuit case law. (Doc. No. 36).

Considering the motions and applicable law, the Court hereby (1) **GRANTS** Walmart's Motion to amend its response (Doc. No. 31); (2) **GRANTS** Plaintiff's motion to exclude the opinions of John Leffler in part (Doc. No. 21); (3) *sua sponte* excludes the opinions of Robert McNealy in part; (4) **DENIES** Plaintiff's Motion for Partial Summary Judgment (Doc. No. 23); (5) **GRANTS** Walmart's Motion for leave to supplement its motion with new law (Doc. No. 36); and (6) **DENIES** Walmart's Motion for Summary Judgment. (Doc. No. 22).

## I. Background

The background facts of this premises liability case are straightforward and predominantly reflected in CCTV surveillance footage. In 2023, Plaintiff was walking into a Walmart store in Houston, Texas when she fell in the entry way of the store. (Doc. No. 23 at 1). It was raining at the time of the incident, and Plaintiff alleged in her Amended Complaint only that she was walking quickly into the store and "slipped and fell on the wet floor near the store entrance." (Doc. No. 9 at 2). Nevertheless, she testified in her deposition and argues in her summary judgment briefing that it was the bunched and wrinkled safety mats that caused her to fall. (Doc. No. 23 at 5).[1] Shortly thereafter, Plaintiff filed this lawsuit alleging premises liability, which Walmart removed to this Court. (Doc. No. 1; 1-2). After a brief discovery period, the parties filed the assorted motions before the Court today. Rather than walk through the posture and arguments of each motion here, the Court will describe the relevant facts and arguments of each motion below.

## II. Legal Standard

### A. *Summary Judgment*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

---

[1] Her deposition actually has two versions of the accident—she first states that she slipped on a puddle of water: "When I entered the store I stepped, and I stepped on the left side and I -- well, I slipped because I stepped there on the left side and on the left side there was water." (Doc. No. 23-1 at 4). She then states that she fell because of wrinkled and overlapping nature of the safety mat: "No. I avoided the puddle. Because when the door opened, I saw it and I stepped on the mat and I fell." (*Id.*).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

B. *Exclusion of Expert Testimony*

Federal Rule of Evidence 702 allows certain witnesses with specialized knowledge to testify about their opinions as experts at trial. FED. R. EVID. 702. Admitting expert testimony is not a decision a court takes lightly, as factfinders tend to place extra weight on expert opinions. See *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993). Accordingly, courts serve an important gatekeeping role when assessing proffered expert testimony, striving to admit qualified, reliable, and relevant opinions but exclude unreliable and misleading "junk science." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

In *Daubert*, the Supreme Court announced several factors courts should consider when exercising their gate-keeping function under Federal Rule of Evidence 702, and in making a

preliminary assessment of whether the reasoning underlying expert testimony is scientifically valid and can properly be applied to the facts in issue. *Daubert*, 509 U.S. at 593–98. These factors include: (1) whether the technique in question has been tested; (2) whether the technique has been subject to peer review and publication; (3) the error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted in the scientific community. *Id.*

"[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire*, 526 U.S. at 153. Though the proponent of the expert testimony "need not satisfy each *Daubert* factor," it has the burden of showing that the testimony is reliable. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004).

### III. Analysis

#### A. Plaintiff's Motion to Exclude

##### a. John Leffler

Plaintiff filed a motion to exclude the opinions of Walmart's expert, Mr. John Leffler. (Doc. No. 21). Plaintiff's primary argument is that Leffler does not provide any opinions that require expertise and are, therefore, unhelpful to the jury and irrelevant. (*Id.* at 6). Plaintiff does not seem to argue that Leffler's opinions are not credible, but rather that they are essentially lay opinions of the events based on video and deposition evidence. Since this would give mere attorney argument the "elevated stamp of expert," Plaintiff argues that Leffler's testimony should be excluded. (*Id.* at 9). Most notably, Plaintiff argues that "[e]xpert testimony is not required for the jury to understand the events leading up to Plaintiff's fall." (*Id.* at 13).

4

In response, Walmart amended its expert disclosure to say that Leffler will *not* opine on how the incident took place, Walmart's safety procedures, or the standard of care that Walmart was required to show. (Doc. No. 31-1 at 3). Rather, Walmart now contends that Leffler's testimony will address whether the use of temporary safety mats was improper and will provide a rebuttal to Plaintiff's expert. (*Id.* at 3; 5–7).

The Court finds that Leffler's proffered opinions as to the occurrence of the accident are not "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue," as contemplated in Federal Rule of Evidence 702. Federal Rule of Evidence 702, which was amended in 2000, post-*Daubert*, states that an expert witness "may testify . . . in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 702 encompasses the *Daubert* inquiry and gives district courts flexibility in determining whether an expert's testimony is reliable. *See* FED. R. EVID. 702 advisory committee's note (2000 Amendments) (explaining that "[t]he amendment . . . provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony," and includes but is not limited to the *Daubert* factors); *see also Matosky v. Manning*, 428 Fed. Appx. 293, 297 (5th Cir. 2011).

Nevertheless, Leffler may testify solely to rebut the opinion of Plaintiff's expert, Robert McNealy, that the safety mats should have been securely affixed to the ground. As the Court explains below, however, McNealy's opinions will also be significantly curtailed—the Court excludes all of McNealy's opinions other than on the question of whether the mats should have been affixed to the ground.

Importantly, however, the Court will not permit Leffler to testify to the content or requirements of the safety reports cited in McNealy's report for several reasons.[2] First, the requirements of these safety reports are inapposite to the questions that will be posed to the jury. The jury will be asked whether Plaintiff was harmed by a dangerous condition and, if so, whether Walmart took reasonable steps to warn of that condition. The jury will not be asked whether Walmart satisfied general industry safety practices or even its own company policy on the use of safety mats. Second, interpreting those guidelines requires no scientific methodology or technical knowledge—a fact made abundantly clear by the fact that neither expert seems to use any. Expert testimony is unnecessary when "the jury c[an] adeptly assess the situation using only their common knowledge and experience." *Peters v. Five Star Marine Serv.*, 898 F.2d 448 (5th Cir. 1990); *In re Horizon Vessels, Inc.*, 2007 WL 655927, at *6 (S.D. Tex. Feb. 28, 2007). A jury is entirely capable of determining whether Walmart acted reasonably in its use of safety mats and warning cones without expert assistance.

Thus, Leffler's rebuttal opinions on the generally recommended safety standards do not involve scientific, technical, or specialized knowledge that would assist the jury. Any opinions rebutting McNealy's potential testimony regarding whether the safety mats should have been affixed to the ground will be permitted.

### b. Robert McNealy

Plaintiff's arguments on the inadmissibility of Leffler's opinions have also persuaded the Court that her own expert's opinions should also be excluded in part. McNealy's report lists the following opinions: (1) Plaintiff slipped on a mat while entering the store; (2) the mats were not

---

[2] In addition, it does not seem to be the case that the safety codes relied on by McNealy have actually been adopted in any state. Further, because Plaintiff did not plead a cause of action for negligence *per se*, the guidelines for safety mats seem to be of little relevance to this case.

6

properly affixed; (3) the mats were positioned in an unsafe manner; (4) the mats were wrinkled and unsafe; and (5) Walmart failed to satisfy the requisite standard of care and should have known the risks. (Doc. No. 22-3 at 4). McNealy's report does not rely on any testing, methodology, technique, theory, or scientific analysis. His opinions are primarily either conclusions based on his weighing of the non-technical evidence or bare legal conclusions. As such, McNealy's report provides almost no assistance to the jury.

Under premises-liability principles, a property owner generally owes those invited onto the property a duty to make the premises safe or to warn of dangerous conditions as reasonably prudent under the circumstances. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). Thus, the pertinent questions are whether there was a dangerous condition and whether Walmart's actions to warn the invitees were reasonable. On these issues, McNealy's opinions provide no scientific or technical analysis of any sort, merely his determination that "it is more likely than not that Plaintiff slipped on the mat." *See, e.g.*, (Doc. No. 23-3 at 12–13). Further, the question of whether Walmart failed to meet a certain industry standard of care is irrelevant—the jury must decide whether Walmart's use of the safety mats and warning cone was reasonable, not whether it complied with a thirty-year-old safety code. As explained below, all of McNealy's opinions except for part of Opinion two are excluded.

Opinion one, that Plaintiff "slipped on the mat," is based solely on Plaintiff's deposition testimony in which she states that she "slipped on the mat," and McNealy's contention that the video shows her "slipping on the mat." (Doc. No. 23-3 at 12–13). This opinion does not even approach the use of scientific or technical methodology—it is merely an attempt to outsource the jury's fact-finding role with "expert" credibility. Thus, McNealy's first opinion is excluded.

7

Opinion two is essentially two opinions in one. First, McNealy states that the safety mats should have been securely affixed to the floor or have had slip resistant backing to prevent them from sliding. Second, McNealy states that the video shows mats moving. Whether or not the video depicts the mats moving requires no specialized knowledge, and the recommendations of general industry practices are irrelevant to Plaintiff's claim. The first part of Opinion two, however, is within the province of a floor safety expert. Therefore, McNealy will be permitted to testify—based solely on his own experience and knowledge—as to whether the safety mats should have been affixed to the floor.[3]

Opinion three is solely based on unsworn photos taken "shortly after" the incident. Notably, the Court is not informed whether "shortly after" means minutes, hours, or days. Also, Plaintiff points to no testimony proving up the pictures to as representing the state of the mats *at the time Plaintiff fell*. Nevertheless, even if the photos were sufficiently proven up, his testimony in this regard would still be inadmissible because "expert testimony is unnecessary" when the jury can "assess the situation using only their common experience and knowledge." *Peters*, 898 F.2d at 450. Rather than providing scientific or technical analysis, McNealy simply provides colloquial truisms like "when mats are improperly positioned to overlap other mats, they become a walkway safety hazard." This is entirely within the province of the jury's "common experience and knowledge" and is not proper for an "expert" to opine on. Thus, Opinion three is also excluded.

Opinion four also seems to be founded exclusively on the unverified photos of wrinkled and overlapping mats to establish what the mats looked like at the time Plaintiff fell. Again, the Court is not informed where or when the photos were taken. Finally, McNealy's fifth opinion states

---

[3] Importantly, McNealy will not be permitted to testify to what Walmart's policies required or what assorted international reports recommend. McNealy's testimony will be permitted solely based on his own expertise and knowledge.

8

that Walmart failed to adequately train its employees and, had they been adequately trained, the incident would not have happened. Not only is this a legal conclusion, but it is also entirely divorced from this case—Plaintiff alleged a premises liability claim, not a negligence claim. Opinion four and five are likewise excluded.

In sum, McNealy's report simply weighs the evidence to make factual findings and legal conclusions that are entirely devoid of scientific analysis, technical knowledge, or systematic methodology. Since his report opines on fact questions within the common experience of the potential jurors, the Court also excludes McNealy's report and opinions.

### B. Plaintiff's Summary Judgment

"Although premises liability is itself a branch of negligence law, it is a special form with different elements that define a property owner or occupant's duty with respect to those who enter the property." *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016) (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)). A plaintiff will generally fall into one of three categories: trespasser, licensee, or invitee. *Lechuga v. S. Pac. Transp. Co.*, 949 F.2d 790, 794 (5th Cir. 1992). Relevant here, premises owners "owe a duty to keep their premises safe for invitees against known conditions that pose unreasonable risks of harm." *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 764 (Tex. 2009). Under this theory of recovery, Plaintiff must prove that Defendant failed in its "duty to inspect the premises and warn [the invitee] of dangerous conditions that are not open and obvious, and that the owner knows or should have known exists." *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999).

Plaintiff argues that there are no issues of fact regarding Walmart's liability. First, she argues that the CCTV video establishes as a matter of law that Walmart employees had constructive knowledge that the area in which she fell was wet, and that the mats were overlapping and

wrinkled. (Doc. No. 23 at 11). Second, Plaintiff contends that the wrinkled and overlapping mats constituted an unreasonable risk. (*Id.* at 12). This is primarily based on McNealy's expert opinion that "[w]rinkled mats are unsafe and deviate from the standard of care." (*Id.*). Third, and finally, Plaintiff argues that Walmart's placement of the mats and warning cone was unreasonable as a matter of law. (*Id.* at 13). To support her contentions, Plaintiff relies exclusively on two pieces of evidence: her own deposition and the CCTV footage.

In response, Walmart argues that Plaintiff's evidence is insufficient to carry her summary judgment burden. First, Walmart argues that Plaintiff's deposition testimony contradicts both her pleadings and the video evidence she relies on. (Doc. No. 23 at 9). Specifically, Walmart points to the discrepancy between the Amended Complaint, which states that Plaintiff slipped on the wet floor, and her deposition testimony, which states she avoided the wet floor and fell because of the safety mat. Relying on the video of the fall, Walmart argues that it shows her slipping (backwards) on the wet floor rather than falling (forward) because of wrinkled mats. (*Id.*).

In a summary judgment posture, the "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, 485 F.3d at 261. Then, if the movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. Reviewing the evidence in the light most favorable to the non-movant, the Court finds that Plaintiff has not shown that she is entitled to judgment as a matter of law.

To start, Plaintiff contradicts her pleading on the actual cause of her fall. First, Plaintiff testified that the cause of her fall was water: "When I entered the store I stepped, and I stepped on the left side and I -- well, I slipped because I stepped there on the left side and on the left side there was water." (Doc. No. 23-1 at 4). This is consistent with her pleading which alleged that she slipped

on the wet floor. Later in her deposition, Plaintiff seems to contradict this testimony by stating that she fell because of wrinkled and overlapping nature of the safety mat: "No. I avoided the puddle. Because when the door opened, I saw it and I stepped on the mat and I fell." (*Id.*).

Plaintiff only cites the second statement and, unsurprisingly, Walmart cites the first. Nevertheless, Plaintiff has the burden. Since the Plaintiff testified in her own deposition that she saw the puddle that she slipped on, and Walmart argues that the video depicts an adequate warning of the wet floor, Plaintiff has not shown that there was an unreasonable risk that was not open and obvious, or that Walmart's conduct was unreasonable as a matter of law. Plaintiff's own deposition testimony creates a fact issue as to what caused her fall.

Next, Plaintiff argues that the video clearly shows her tripping on the overlapping and wrinkled mats. In response, Walmart argues that the video does not actually support Plaintiff's allegations. Plaintiff claims that the video depicts her falling due to the wrinkled and overlapping mats. Walmart argues that the video does not provide a clear view of Plaintiff's fall. It maintains that at the moment she falls, the view of the Plaintiff is obstructed by other customers. Further, while the video could be argued to show that the mats were overlapping in an area further away from where Plaintiff fell, Walmart contends that it does not support her claim that it was wrinkled and overlapping *where she fell*. In addition, Walmart argues that the video unequivocally establishes that it acted reasonably to warn its patrons of wet floors. In the security video of Plaintiff's fall, she was within the line of sight of an orange cone in the entrance that warned patrons of the wet floors as well as safety mats preventing the accumulation of water.

The Court finds that several fact issues preclude it from granting Plaintiff's summary judgment. To start, as noted, Plaintiff has pleaded and testified to two separate causes of her fall. Plaintiff pleaded that she slipped on the wet floor and then stated in her deposition that she slipped

11

when she "stepped there on the left side and on the left side there was water." (Doc. No. 23-1 at 4). Then, Plaintiff stated that she actually *avoided* the water and fell due to the wrinkled and overlapping mat. (*Id.*). Since the Court must credit the evidence in the light most favorable to the non-movant, the Court finds that a fact issue exists regarding the cause of Plaintiff's fall.

Further, the Court finds that the CCTV video neither supports nor precludes either party's contentions. In the video, the view of the Plaintiff is obstructed by other customers at the moment she falls. Further, the video depicts Plaintiff slipping and falling backwards (as on water) rather than tripping and falling forward (as over a wrinkled mat). Nevertheless, the video does not provide sufficient clarity to show the mat as completely flat or without wrinkles. Again, construing the evidence in favor of Walmart, the video creates a fact issue as to whether Plaintiff slipped on the wet surface that she saw beforehand or tripped over a wrinkle in the safety mats.

A second fact issue exists regarding the reasonableness of Walmart's warning to its customers. The video depicts an orange "wet floor" cone in the vicinity of Plaintiff's fall, warning her of the wet floors. While there was some attempt to warn, the Court cannot find that it was sufficient, or insufficient, *as a matter of law*. Plaintiff's failure to notice the orange cone alone does not render Walmart's efforts to warn legally insufficient. *See General Motors Corp. v. Saenz on Behalf of Saenz*, 873 S.W.2d 353, 360 (Tex. 1993) ([P]laintiffs' argument that the "warning could have been more prominent does not prove that it was not prominent enough. Every warning can always be made bigger, brighter and more obvious."). Still, while the warning cone was within eyesight of one situated like the Plaintiff, it was much closer to the fruit stands than it was to the doorway where the Plaintiff fell. As such, the Court finds that a genuine question of material fact exists as to whether the warning cone was "near" the dangerous condition. *See Caballero v. Walgreens Co.*, No. 24-20512, 2025 WL 1555222, at *1 (5th Cir. June 2, 2025) (citing *Golden*

*Corral Corp. v. Trigg*, 443 S.W.3d 515 (Tex. App.—Beaumont 2014, no pet.)); *see also Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 204 (Tex. 2015) ("What a reasonable landowner would do is often a jury question."). Since the Court finds that there are several fact issues exist relating to Plaintiff's cause of action, Plaintiff's motion is **DENIED**. (Doc. No. 23).

### C. *Walmart's Motion for Summary Judgment*

Walmart also moved for summary judgment on Plaintiff's premises liability claim. (Doc. No. 22). While Walmart makes different arguments, the fact issues that preclude granting summary judgment for the Plaintiff also preclude summary judgment for Walmart. To start, the video depicts the safety mats potentially overlapping, though perhaps not near the area where Plaintiff fell. Certainly, this does not establish that the mat placement was a dangerous condition or the cause of Plaintiff's alleged injuries. Nevertheless, now construing the video in favor of the Plaintiff, it is sufficient to create a genuine issue of fact. Further, the warning cone placed by a Walmart employee was several feet from the entry way where Plaintiff fell. As stated above, the question is whether the cone was "in the area of the condition," *Caballero*, 2025 WL 1555222 at *1, and therefore constitutes reasonable action to warn is a material issue of fact precluding summary judgment.

In sum, both parties rely on the same two pieces of evidence to support their contradictory theories of the case—Plaintiff's deposition and the CCTV video. A situation where video evidence can persuasively support entirely contradictory legal theories is the quintessential example of a genuine fact issue. Thus, because Walmart has also failed to establish that it is entitled to summary judgment as a matter of law, the motion for summary judgment is **DENIED**. (Doc. No. 22).

### IV. Conclusion

In conclusion, the Court makes the following rulings: (1) the Court **GRANTS** Walmart's Motion to amend its response (Doc. No. 31); (2) the Court **GRANTS** Plaintiff's motion to exclude

the opinions of John Leffler in part (Doc. No. 21); (3) the Court *sua sponte* excludes the opinions of Robert McNealy in part; (4) the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment (Doc. No. 23); (5) the Court **GRANTS** Walmart's Motion for leave to supplement its motion with new law (Doc. No. 36); and (6) the Court **DENIES** Walmart's Motion for Summary Judgment. (Doc. No. 22).

Signed this 24th day of June, 2025.

Andrew S. Hanen
United States District Judge